20-32-28 United States v. Sands. Mr. Hansmeier, you may proceed. Judge Hartz, and may it please the court. I want to talk after that discussion, I want to talk about three things. I want to talk about Mau Mau and McGee. I want to talk about the text of 3582 c1a, and I want to talk about how that text compares to subsection c2. Three points on Mau was not raised in either of those cases. The statement in this court's opinion that, you know, you don't have to address all three factors is not a holding that a court can simply skip over the first two steps. It's not a holding. And our position is simply that what that has to mean is that if you're going to move to the 3553a factors, you assume the first two steps are met. I think that principle is consistent in the law, whatever law you're talking about. When there's a multi-step test to get past threshold determinations, you have to assume they're correct. It's that simple. I do want to note that Mau Mau was a grant. McGee was a denial. The opinions are identical. So to say that there is a different analysis or that this court is conduct a different analysis on appeal based on whether a district court denies or grants a motion doesn't make sense to me when you have identical opinions, one from a grant, one from a denial. And on the holdings in those cases, the basic error made in both those cases was that the district courts got the steps wrong. It's that simple. And that's our argument here, that this district court got the step wrong. And Mau Mau and McGee both say that you review that issue de novo. And if the district court gets the steps wrong, you send it back. You mean the order of steps? Well, maybe. I think there is some of that going on in McGee because you have this conflation of step one. What the district court did in McGee was say, I'm using step two to determine step one. And this court said, no, step two is inapplicable now. So we're going to send it back for a proper analysis under step one. Well, implicit in that is the notion that these are freestanding steps. I mean, this notion that there needs to be some assumption made. Well, under that view, there would have to be an assumption made of step two in order to do this analysis. And it's clear from McGee and Mau Mau that you don't have to do that. That these are three freestanding steps. And you can evaluate them. And so, I mean, I'm not saying it's implausible to read it as requiring an assumption. But that's not self-evident to me from the language unless there's something beyond that you can point to beyond in the steps in the opinion that would suggest that. Like I said, the opinions don't talk about this issue. And I think it is an open question. And if we can move to the text, look, this is a statute that has conditional language. It has the phrase if. And what comes after the phrase if is this phrase, extraordinary and compelling reasons warrant such a reduction. It's not just extraordinary and compelling reasons, full stop. It is extraordinary and that is a requirement. And I want to make this clear. Our position, I don't even think it's defendant-friendly to be honest. What we're saying is that you never get to the 3553A factors. If you're a defendant and you can't make that threshold showing of extraordinary and compelling reasons that warrant a sentence reduction, the district court doesn't even get to any of your arguments. So how that is a defendant-friendly standard is beyond me. And it's what the text requires. Let me question you about that. The text says that the court may reduce the term of imprisonment and may impose a term of probation or supervised relief, et cetera, after considering the factors set forth in section 3553A to the extent that they are applicable. Let's stop there. That seems to me to say that if the court decides that I don't think that relief is appropriate after considering the 3553A factors, so I stop. I stop and I don't need to consider whether the later requirements, if, are satisfied. I'm sorry, go ahead and respond. So that position is foreclosed by the Supreme Court's decision in Dillon. And here's why. This phrase, may reduce the term imprisonment, comma, after considering the section 3553A factors, comma, if, is identical in both C1A1 and C2. And what the Supreme Court said in Dillon is that that establishes a two-step inquiry. And quote, a court must first determine that a reduction is consistent with 1B1.10. That's the language that comes after the if in C2, before it may consider whether the authorized reduction is warranted, either whole or in part, according to the factors set forth in 3553A. So what Dillon tells us is, is that when Congress structures a statute like this, what comes after the if is a determination that must be made before you even get to the 3553A factors. And one more point on this, and this goes to my point about this, I don't understand why the government's upset with our test. The reason for this, Dillon explains, is because, this is a direct quote, because reference to section 3553A is appropriate only at the second step of this circumscribed inquiry. It cannot serve to transform the proceedings under 3582C2 into plenary resentencing proceedings. The inverse of that is that if you say that all the district court has to do is consider the 3553A factors, then what you're saying is there is plenary resentencing under 3582C1A. And that's, Dillon says no. Well, it's not plenary resentencing. I mean, the court is considering the same circumstances it did before, along with whatever additional circumstances are at play. Is additional education in jail? Is health conditions, which were the predicate for bringing the motion to begin with? I mean, why is that additional resentencing? I mean, all those things would have been on play anyway. I'm just telling you why the Supreme Court explained that two-step process and the reasoning behind it. That's what I'm explaining. And I think it is a logical argument. My only concern right now is that we're, we have, you know, stare decisis causes us to try to make sense of McGee and Mau Mau. And in writing on a blank slate, what you're saying might have been compelling, but that's not where we are. And the way that McGee and Mau Mau were framed was sequential independent tests. And there was no language and they had ample opportunity to put language in there that would have been along the lines of what you're saying and neither. And that wasn't done. But, but just show us why would Mau Mau or McGee have done that when this, it wasn't about the third step. So I don't understand why we're drawing a rule from Mau Mau and McGee about the third step sequencing when the case had nothing to do with that. Because this talk about independent tests is I guess the problem. When it's speaking about independent tests and independently dispositive tests, that in itself, it seems to imply that you cannot just say that you have to reach step one for any reason. Well, you can assume it, you can assume it. I'm not saying you can't assume it, but it has to be, think about it. The only reason you get into court is if you can show extraordinary compelling reasons to warrant a reduction. Why, why would Congress have wanted district courts to say, I'm not deciding that issue? I mean, that, that is the issue. And when you think about this in terms of the parsimony principle, as, as Kayla was saying earlier, I mean, we have an initial sentence that was found sufficient, but not greater than necessary at the time of sentencing. And all we're saying is that if, if a district court actually finds that there are extraordinary and compelling reasons that warrant a sentence reduction, that's the statutory language, then that has to be given more weight than just saying, well, we're going to just consider the I mean, this is a finding of extraordinary and compelling reasons that warrant a reduction, and it needs to be made. And if it's, and if it goes against us, we don't even get to the 3553 factors. But what strikes me as interesting though, is that at least the way McGee and Maumauer framed that, that line, extraordinary and compelling circumstance reasons that warrant such a reduction, you can break that in two parts. One is, were there extraordinary and After you look at section two, when that is in play, you decide whether they warrant a reduction. So there is a discrete determination of extraordinary and compelling circumstances. And then the warrant and reduction, does it warrant a sentence reduction? Well, the reason what the, what it seems to be saying is that the only way you're going to arrive at the ultimate conclusion is to go through this sequential process. But if you could knock it out and say, no matter what extraordinary and compelling circumstances you have in light of a 3553a consideration, you will not warrant a sentence reduction. Why isn't that consistent with the statute? And no, and no, in light of the need to view extraordinary and compelling reasons as full stop, that is the finding that you're making, that there were extraordinary and compelling reasons that otherwise all things considered would warrant a sentence reduction. Just maybe I'm just too much of a text list here. But I can tell you the phrase is extraordinary and compelling reasons warrant such a reduction. That's what Congress wrote. I can't I mean, I'm, I don't know how you how you put a full stop there. And then say those are two different analysis. Oh, I like the language. But the question is warrant a sentence reduction is qualifying one, which I mean, warrant such a reduction. And that and so it's are these reasons ones that fall that result in a reduction? Well, the only way we know that the statute tells us is if we look at 3553a, that's and when applicable, though, what, what, what, what the sentencing guidelines would provide. So that's the only way we know whether you're going to get to the finish line, right? But you have to cross the threshold. That's my point. If you don't cross the threshold and make the threshold determination, you never get not only do you not get to the finish line, you don't get to step three. And that's my point. And I think the text absolutely says that I think there's no other way to read it in light of Dylan's interpretation of a neighboring provision, the next provision within the statute. Let me suggest the structure, their distinction between this and Dylan. The problem in Dylan was the court is saying, when you perform your 3553a analysis, under C2, 3582 C2, you don't do a full fledged 3553a analysis, you're limited to only considering whether a change is required because of the sentencing guideline change. That's why that was the thrust. Tell me if I'm wrong about this. That was the thrust of what the court is criticizing in Dylan, is that the sentencing court in that case did a full fledged 3553a resentencing. And the court said, no, if you look at 3582 C2, and I hope I'm getting these references correct, then the 3553a resentencing is greatly constrained. You just look at whether the change in the sentencing guidelines would require a resentencing, given all the findings that were made before. And I don't really understand that. I'm sorry. I don't think there's a difference between saying the threshold determination is a changed guidelines range versus the threshold determination is extraordinary and compelling reasons that warrant a reduction. I'll give you a little extra time to respond to it. Okay. The difference is, in a 3582 C1 proceeding, the court does redo the 3553a analysis. It's a resentencing proceeding. Are you saying it's not a resentencing proceeding, that the only thing that can be considered now is whether the prior sentence should change because of these extraordinary circumstances? Is that what you're saying? Judge, I'm saying the statutory language is identical in C2. It's identical. What was the point being made in Dillon? What was the thrust of what was being said in Dillon? You can take any statement out of context and try to apply it to a different context. There have been lots of occasions when courts have said, you do this first, this second, this third. That's what the Sixth Circuit said with respect to 3582 C1. That's what you're relying on. The Sixth Circuit says there are three steps. This is the first step, this is the second step, this is the third step. Then in a later decision, the Sixth Circuit clarified, correct me if I'm wrong, it said, no, we didn't mean it has to go in that order. That's how we labeled them, step one, step two, step three, but you can deny relief under any of those steps without considering the others. That's standard language. Through all that on qualified immunity, you have to prove that there was a constitutional violation and that the constitutional violation was clearly established at the time. The court has made clear you can go to the clearly established law prong of qualified immunity without considering the first step. If you assume it, if you assume a constitutional violation, absolutely you can. You don't have to assume a constitutional violation in a qualified immunity context. We don't do that. Let me ask counsel, what do you get out of the assumption? I mean, I need to understand why is that important? It's hugely important because the assumption is not just extraordinary and compelling reasons, it's extraordinary and compelling reasons that warrant such reduction. That essentially means that something has changed from the time of sentencing to now that warrants a reduction. And then if the 3553A factors are going to trump that, you need to have a sufficient analysis. Whereas if a district court just says there are no extraordinary reasons, we're done here, we're done. And if that's what Judge Robinson had said in this case, I mean, to appeal that discretionary decision probably would not have assumed that the health conditions were ones that otherwise would warrant a reduction, okay? And then a reduction in sentence. And then the court got to the 3553A factors and said, this guy is a sociopath and there's no way in the world, I don't care whether he's at great risk of dying of COVID, there's no way in the world I'm going to let this guy out. What do you get out of that? I mean, what do you get out of the assumption? I just, I'm having a hard time understanding why, what more you get out of the assumption than you would if the court said, I will consider the health reasons that you brought to the table when I do my 3553A analysis. What's the difference? It's the parsimony principle. That's the difference because the sentence he is serving was sufficient, but not greater than necessary. When you combine the parsimony principle with an extraordinary compelling reasons warrant a reduction requirement, that third step becomes much more important because then you're saying that 3553A factors outweigh what otherwise would warrant a reduction. That's it. That's our point. I'm way over time. Thanks for that. That's okay. Mr. Brown. Our argument is, is again, very simple as it was with the last case. We think the defendant's claim is foreclosed by McGee. The court said there are three distinct steps that if district court denies it on the basis of one step, that does not even need to consider the other steps. The court was even clear when it said, when you grant a motion, then in that event, you have to consider all three steps. So we think that that rule and rationale forecloses the defendant's claim. And we think the analysis ends there. Either the court follows McGee or it doesn't. It reconsiders McGee, asks for new briefing on everything else, considers defendant's Dillon claim and the and we go back to square one and we get rid of McGee. Otherwise, we follow McGee. If the court follows McGee, then the defendant loses. It's just really, it really comes down to that, we think. Well, is the court's 3553A analysis itself here sufficient? I mean, there were some arguments, I think, made to the effect that the court didn't adequately consider things like his arguments for errors, for lack of a better word now, that were reflected in the court's analysis. So, I mean, was it really a sufficient analysis? Even if we were to look at that analysis standing alone, was that sufficient to support the denial of relief here? Well, yes, we think it was sufficient. If you look at pages, volume one, page 121 through 123, you'll see that the court expressly considered the defendant's health condition in its 3553A analysis. It said, although defendant has underlying condition, increasing his risk of serious complication should he contract COVID, the reduction of the sentence in such a significant manner would not afford adequate deterrence or punishment. Therefore, the court considered the nature and the history and characteristics of the defendant. The court went on to talk about the, so the court talked about the need for deterrence. The court talked about on volume one, page 122, the circumstances of the offense. The court talked about the defendant's negative performance while on probation and parole, prior gang involvement that warranted the initial sentence. The court discussed the disparities between the defendant and his co-defendants, and the court talked about adequate deterrence. And then the court concluded that in light of all these factors, the 384-month sentence was sufficient, but not greater than necessary to meet the 3553A factors. We really don't see what more the district court needed to say. What about the alleged errors and factual errors in the court's presentation? I mean, in the best light, one could view them as typos, but they could also cause one to have your confidence that the court was exercising reasoned judgment, sapped by virtue of those comments. I mean, those errors. In other words, if the record reflects that the court was haphazard in doing what it did, in terms of making what were obvious, factual statements that were not correct, one could suggest that maybe it wasn't exercising reasoned judgment in making its determination. We think when you look at the balance of everything the court did, that any small factual errors would really not change the grounds for affirmance, because basically everything is in there that the court needs to affirm. It is a recitation of the offense conduct and the defendant's medical condition. It talks about COVID. It talks about everything. We think it's still affirmable, even if there are some errors. If the court's going to hold, we do recognize that when the court bases a sentence on an error of fact, then that is sometimes an abuse of discretion. We do recognize that. But here, we think that what the court has done is sufficient to affirm. We've got a few moments, so let me go ahead and address this question of the vaccination status of Mr. Sands. I wish I'd had a chance to raise that with Mr. Hansmeier too, but the question is, he's now been vaccinated. What do we do with these changed circumstances? We're a court of appeals. We're looking at a record that in some sense, by virtue of these developments, has been altered from where it was at the time that Mr. Sands brought his motion. In particular, let's look at the first factor. If we were to consider the first factor, extraordinary and compelling reasons, even by virtue of your last paragraph of your response, that factor has changed. Has it not, in light of the fact that he's now vaccinated and there are more people in that? Well, we do agree that it has changed as we did state in our response. The vaccination mitigates his risk from COVID to an extent that he can no longer sustain an extraordinary, compelling reason to grant compassionate release. As far as what the court does with that, the court can on its own cite other cases from other courts for the proposition that a vaccination a mitigates the risk enough so that it's not extraordinary and compelling. Yes, but my recollection is that you were citing district courts in making that determination. In your brief, I don't recall an appellate court that you cited in that regard. I guess what I'm asking, and I take it you understand, is the procedural posture that we're in. It'd be one thing if this were at the district court and we got news that he had been vaccinated and you said, Judge, he's been vaccinated. That's a game changer. Well, we're not at a district court and the district court ruled on a record that is different than it is now. I'm just trying to get a sense of what you think the appropriate disposition should look like. How should we approach that fact? Well, we think the court can assume in its opinion that the facts considered by the district court as the district court had them before it is sufficient to affirm on the grounds that the district court face at the time and not even deal with the issue of whether they've been vaccinated. The court can just assume based upon the opinion itself, given the facts based by the district court. That's one option. The other option is for the court to say, Well, Mr. Brown, I'm sorry. Please repeat that. We can assume what again? State what we can assume. Microphone. I think the court can assume consistent with the district court, the court can look at the facts based by the district court and say, based on the facts faced by the district court and given the district court's opinion, talking about those facts in light of in light of the in light of the statute, the court, this court could just affirm the district court without even talking about how the vaccination status changes. The court can drop a footnote stating we recognize that it mitigates it. But that that issue was not was not adequately briefed by the parties regarding the how how much it mitigates it or how effective it would be or whether it would make his circumstances non extraordinary compelling. Even so, we affirm even assuming that that constitutes an extraordinary compelling circumstance based upon the facts found by the district court. Well, I thought about I thought about that. But the one thing that concerns me about that is that that line of reasoning is that at some point, doesn't it become an advisory opinion? Because because the reality is, look, if we make the assumption, it is in fact true that any assumption we make of that sort is going to benefit the defendant, because to the extent that the facts have changed, they have changed in a way that would undercut his claim of extraordinary and compelling reasons. So if we assume that the world is the way it was when he filed his motion, that actually helps him. The only problem with that that I see, and maybe it's not an insurmountable problem, but but the only problem that I see with that, which I want your response to is it would seem to me that at a certain point, depending on what, particularly depending on what factor we rest on, it becomes an advisory opinion, because the world is not what it was when the district court made its decision. And I'll say that, but let me make it more specific. For example, if we were to rest our decision on the first factor, extraordinary and compelling reasons and say, okay, the court, what what the court did, and I, I think this may have been one where the court, did the court reach the extraordinary and compelling reasons in this one, I think it accepted the concession of the government. Is that right? No, I think it alighted the government's concession and didn't consider it. Didn't consider it. So in this one, it may not be an issue, but on the, but, but, but the point would be at a certain point along the continuum, it becomes an advisory opinion, does it not? Because, because the facts really are not what they were when the court made its decision. Well, you know, we think that the court can, that this court can simply just affirm on, on the courts on the district court step three analysis without, without rendering an advisory opinion, say the court looked at the factors and the defendant's health conditions and, and, and based on step three under the 35, 53, eight factors found that was sufficient. And, and just affirm on that basis without even talking about whether the defendant's health circumstances are extraordinary and compelling. The district court did not find they were extraordinary, compelling, and didn't even, didn't even address that issue. So whether they were, whether his COVID status vaccinated or not was extraordinary and compelling, basically played no part in the district court's decision below the court, a lighter, the government's concession did not accept it. And the court can affirm on the three, five, five, three, a step three ground without rendering an advisory opinion. Mr. Brown, how would you distinguish the Dylan decision? I would distinguish it the same way. This court, your honor has articulated at the Dylan decision was to avoid a plenary resentencing. And we're here in a different posture on, on this statute rather than the one considered in Dylan. There are some textual similarities, but you know, by and large, we think that this court, that this court got it right in the G and this court's reading of the statute is this court's reading of the statute per McGee is faithful to the text of the statute. Could it be read in a different way? Maybe. And, but the we have McGee as the, as the, as the precedent now, and, and that's, that's what the court needs to follow unless it wants to overturn McGee, which of course it can do anything further, Mr. Brown. No, thank you, your honor. Thank you for your time. Mr. Hansmeier. Um, I think there are a couple of things we should pursue with you still. Um, I I'd like you to respond to need to the questions raised by judge Holmes regarding the vaccination status at this time and whether we would just be issuing an advisory opinion. And if you resolve the legal issue, I don't know that the facts affect that. Obviously I agree that is vague. Let me stop you. I mean, it's an advisory opinion if there are no facts for us to be considered. So we can't just ignore the factual context. I don't think, I mean, if it, if it were true that judge Robinson couldn't grant the motion on remand, then it would be an advisory opinion, but she still could. I mean, district courts are still granting post-vaccination COVID-19 3582 C1 emotions. I mean, they, they just are, uh, we cited six in the supplemental brief. I think there are at least six more than I've, that I saw yesterday that have come down since. So it's happening. Well, I guess, uh, and this case may not put a fine point on it because of how the court essentially alighted, uh, to use, uh, Mr. Brown's word, the, the first consideration, but if the court had relied upon, as you, you seem to have expected the court to do the first factor of, of extraordinary and compelling reasons and found there were no extraordinary and compelling reasons based upon the world that existed then, then, and, and he is now vaccinated. Now they, at least based upon the government's representations, there has been a, a pace of vaccinations in the prison. So there are less people for him to be contaminated by. Well, the world has changed. If we were to rule on extraordinary and compelling reasons determination, we would be, yes, we could say the court was right or wrong on the facts that existed, but those facts don't exist now. And just as we have to be concerned about questions of mootness, where if the facts are altered and therefore we have no basis to grant relief, well, in this situation, we would be engaging arguably in a fiction. I mean, particularly on the first factor, it seems to me it becomes fairly salient what the facts really are. Isn't that right? Judge, we're not asking you to rule whether there are extraordinary and compelling reasons. So that, that is a, that is a decision that the district court makes in the first instance. And we haven't appealed that because we don't think she ever made that determination. Does that? So I think it is, it does help me, although I was trying to avail myself of your, your wisdom on how, on hypothetically how one addresses such a situation, but, but yes, for purposes of us in this case, it really probably doesn't matter because the court didn't do anything with number one. I think if you had a government appeal where, where a district court found extraordinary compelling reasons that COVID-19 and the government appealed and in between then the defendant was vaccinated, then that would be a different case. And I'm not sure what you do with that, to be honest with you, send it back. Probably. Yes. I don't know. All right. Thank you. Let me ask another question that our discussion earlier about the order in which these three factors need to be considered. I I've been troubled from the outset by the fact that what we're calling the first factor, and I'm going to suggest it's actually the second factor. The language of the first factor says extraordinary and compelling reasons warrant such a reduction. If you look at that, that seems to decide the matter absent. I mean, you'd have to check to see if it's consistent with the policy statements, but we've already held that there aren't any relevant policy statements. And how can we say extraordinary and compelling reasons warrant such a reduction and then say, well, we're not going to grant it to you. It's, it seems to me that that couldn't mean that, but it could mean that if the first step actually is to perform the 3553 for 3553 a analysis, because then you've decided as the statutory language provides that a reduction in sentence is warranted. The, the, the language allows the court to reduce the term of imprisonment after considering the factors set forth in section 3553 a, but even though it does, those factors do suggest a reduction, the court then has to find that I'm allowed to revisit the prior sentence, which ordinarily district courts aren't allowed to do, but I'm allowed to justify it by extraordinary and compelling reasons. So it almost seems that what we've been calling the first step would have to be the second step, the way the first step is written. You have to, you have to reduce the sentence because it's warranted. But, and, and, and it can't be, it has to be a conditional decision. It has to also require the examination of 3553 a factors. Yes. If it's written that way, extraordinary and compelling reasons warrant the reduction that must mean that the court has already conducted the 3553 a analysis as I would reduce the sentence. So I would reduce it and I'm allowed to, contrary to the standard law, because they're extraordinary and compelling reasons. I, I don't agree with that at all. Sorry. And I think the senior life. So it's still a threshold. So there's no requirement because the Congress uses the phrase may reduce the term of imprisonment. So we know there's no requirement, but beyond that, that is threshold language saying that's the same thing as like C2. So you have a C2 case where the guidelines range has changed. That gets you in the door at that point with the reduced range, you can then consider the 3553 effect. There's no different here. You have extraordinary and compelling reasons that warrant a reduction that gets you in the door at that point you're in the door. Then whether, whether the discord is going to use its discretion or not depends on the third step, the 3553 effect. I really think judge hearts. If you read Dylan, you will completely understand what I'm saying. It's the same statutory language, the same structure, their neighboring provisions. And I don't see how you can interpret them differently. I just, that's, I just don't see how you can do it. Thank you. Okay. Okay. Submitted counselor. Excuse.